FILED
2015 MAR 27 PM 1:12
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2015 Grand Jury

| UNITED STATES OF AMERICA, | No. CR **CR15-0152** |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act to be Done] |
| GARY J. ORDOG, M.D., | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH NINE

[18 U.S.C. § 1347]

A.  INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

The Defendant

1.  Defendant GARY J. ORDOG, M.D. ("ORDOG") was a physician who owned and operated a mobile medical clinic, which was operating out of a vehicle with California License Plate Number 2XID205 (the "Mobile Clinic"). The Mobile Clinic was stored at RC Storage, Space # 125, 25625-½ Aurora Street,

Valencia, California, within the Central District of California. During many appointments with patients, the Mobile Clinic was parked at 23642 Lyons Avenue #220250, Newhall, California, within the Central District of California.

2. At times, defendant ORDOG also used additional facilities either as storage space or as office space. These locations included 21716 Parvin Drive, Santa Clarita, California, and 26504 Valley Oak Lane, Valencia, California. Both of these facilities were located within the Central District of California.

3. Defendant ORDOG held himself out to be a physician who could assist patients with various toxicological symptoms, including, but not limited to, those related to various mold and chemical exposures, as well as exposure to various other substances.

4. Defendant ORDOG was a Medicare provider who previously had applied for and been issued a Medicare provider number by Medicare.

5. Defendant ORDOG billed Medicare for office visits and other outpatient visits for the evaluation and management of Medicare beneficiaries.

6. Between on or about March 1, 2010, and on or about December 31, 2014, defendant ORDOG submitted claims to Medicare totaling approximately $6,524,660, for which Medicare paid defendant ORDOG approximately $2,573,667.

The Medicare Program

7. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who

were 65 years and older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

8. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each beneficiary was given a unique health insurance claim number ("HICN"). Physicians and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

9. To participate in Medicare, providers were required to submit an application in which the provider agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims.

10. A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

11. Most providers submitted their claims electronically pursuant to an agreement they executed with Medicare in which the providers agreed that: (a) they were responsible for all claims submitted to Medicare by themselves, their employees, and their agents; (b) they would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization to do so; and (c) they would submit claims that were accurate, complete, and truthful.

12. Medicare generally reimbursed physicians for services that were medically necessary to the health of the beneficiary and were personally furnished by the physician or the physician's employees under the physician's direction.

13. CMS contracted with regional contractors to process and pay Medicare claims. Noridian Administrative Services ("Noridian") was the contractor that processed claims involving physician services in Southern California from approximately September 2013 to the present. Prior to Noridian, the contractor for physician services was Palmetto GBA from 2009 to 2013. Prior to Palmetto GBA, the contractor for physician services was National Health Insurance Company from 2006 to 2009.

14. To bill Medicare for physician services a provider was required to submit a claim form (Form 1500) to the Medicare contractor processing claims at that time. When a Form 1500 was submitted, usually in electronic form, the provider was required to certify:

   a. that the contents of the form were true, correct, and complete;

   b. that the form was prepared in compliance with the laws and regulations governing Medicare; and

   c. that the services being billed were medically necessary.

15. A Medicare claim for payment was required to set forth, among other things, the following: the beneficiary's name and HICN; the type of services provided to the beneficiary; the date that the services were provided; and the name and Unique

Physician Identification number or National Provider Identifier of the physician who performed the services.

B. THE SCHEME TO DEFRAUD

16. Beginning in or around January 2009, and continuing through at least in or around February 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant ORDOG, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C. MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

17. The fraudulent scheme operated, in substance, as follows:

    a. Defendant ORDOG obtained beneficiaries through various means, including, in many instances, through referrals by attorneys, counselors, and "patient care advocates" of patients purportedly suffering from various ailments associated with exposure to mold and other toxic substances.

    b. Defendant ORDOG would generally see a beneficiary at least once in connection with the potential evaluation and management of the beneficiary's conditions. Subsequently, often several years after the last time he ever saw a particular

beneficiary, defendant ORDOG would submit and cause to be submitted false and fraudulent claims to Medicare for multiple office visits or other outpatient visits with the same beneficiary, when in truth and fact, and as defendant ORDOG then well knew, such visits never occurred.

    c. For a purported office or other outpatient visit with a beneficiary, defendant ORDOG would generally bill Medicare using three Medicare codes that consisted of one evaluation and management code and two prolonged services codes. Collectively, these three codes represented services that would typically require approximately two hours of face-to-face time with the beneficiary for the purpose of conducting at least two out of the three following activities: a comprehensive history; a comprehensive examination; and/or medical-decision making of high complexity.

    d. In some instances, defendant ORDOG would submit and cause to be submitted false and fraudulent claims to Medicare for office visits or other services for beneficiaries who were deceased well before the purported dates of service.

    e. In some instances, defendant ORDOG would submit and cause to be submitted false and fraudulent claims to Medicare for services he purportedly provided to beneficiaries on dates when he was actually travelling and out of the area on the purported dates he provided these services. Sometimes, defendant ORDOG's claims for a certain date of services would total to more than twenty-four hours of services for that date. Also, on at least one occasion, defendant ORDOG billed for dates of service with a beneficiary before he had ever met the

beneficiary.

f. Defendant ORDOG, at times, created false and fraudulent documentation to support his false and fraudulent claims to Medicare; the documentation purported to show that visits corresponding with the claims had taken place even though, as defendant ORDOG then well knew, the visits reflected in the documentation never occurred.

g. Based upon the false and fraudulent claims and, in some instances, based upon the false documentation defendant ORDOG provided to support his claims, Medicare paid defendant ORDOG for services he did not in fact perform.

h. Those payments were deposited into bank accounts that defendant ORDOG controlled, including an account that defendant ORDOG opened in or around May 2011 at Santa Clara Valley Bank, account number xxx6038, on which defendant ORDOG was the only signatory. Medicare payments were deposited into ORDOG's bank accounts pursuant to an electronic funds transfer agreement ("EFT") to Medicare that defendant ORDOG executed and submitted, most recently in or around May 2011, listing himself as the Medical Director and as the sole point of contact.

D. THE EXECUTIONS OF THE FRAUDULENT SCHEME

18. On or about the dates set forth below, within the Central District of California, and elsewhere, defendant ORDOG, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully submitted and caused to be submitted to Medicare for payment the following false and fraudulent claims:

7

| COUNT | BENEF-ICIARY | CLAIM NUMBER | ALLEGED DATE OF SERVICE | ALLEGED SERVICES | APPROX. DATE SUBMITTED | APPROX. AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ONE | B.B. | 551210088057560 | 3/23/2010 | Evaluation/Management; Prolonged Services | 3/29/2010 | $650 |
| TWO | D.H. | 551210222018810 | 7/16/2010 | Evaluation/Management; Prolonged Services | 8/10/2010 | $650 |
| THREE | J.G.N. | 551210293018780 | 10/09/2010 | Evaluation/Management; Prolonged Services | 10/20/2010 | $650 |
| FOUR | J.G.N. | 551210333096710 | 11/20/2010 | Evaluation/Management; Prolonged Services | 11/29/2010 | $650 |
| FIVE | B.Q. | 551212051066790 | 1/07/2012 | Evaluation/Management; Prolonged Services | 2/20/2012 | $650 |
| SIX | E.H. | 551212366022650 | 7/23/2012 | Evaluation/Management; Prolonged Services | 12/31/2012 | $490 |
| SEVEN | D.W. | 551213002026400 | 12/14/2012 | Evaluation/Management; Prolonged Services | 1/02/2013 | $490 |


| COUNT | BENEF-ICIARY | CLAIM NUMBER | ALLEGED DATE OF SERVICE | ALLEGED SERVICES | APPROX. DATE SUBMITTED | APPROX. AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| EIGHT | J.R. | 55121322<br>1004420 | 7/29/2013 | Evaluation/Management; Prolonged Services | 08/09/2013 | $490 |

//

//

//

| COUNT | BENEF-ICIARY | CLAIM NUMBER | ALLEGED DATE OF SERVICE | ALLEGED SERVICES | APPROX. DATE SUBMIT-TED | APPROX. AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| NINE | B.A. | 55171331<br>5010030 | 7/10/2013 | Evaluation/Management; Prolonged Services | 11/11/2013 | $490 |

A TRUE BILL

/S/
Foreperson

STEPHANIE YONEKURA
Acting United States Attorney

*[signature]*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

CONSUELO WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GEJAA GOBENA
Deputy Chief, Fraud Section
United States Department of Justice

BEN CURTIS
Assistant Chief, Fraud Section
United States Department of Justice

RITESH SRIVASTAVA
Trial Attorney, Fraud Section
United States Department of Justice

10